UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMARA DAVIS, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     vs. | ) Cause No. 1:16-cv-210-WTL-DML |
| | ) |
| **FORD MOTOR COMPANY,** | ) |
| *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

### ENTRY ON SUMMARY JUDGMENT MOTIONS

This cause is before the Court on Defendant Ford Motor Company's motion for summary judgment (Dkt. No. 53), Defendant United Auto Workers' motion for summary judgment (Dkt. No. 55), and the Plaintiff's cross-motion for summary judgment (Dkt. No. 62).[1] The motions are fully briefed, and the Court, being duly advised, now **GRANTS** the Defendants' motions and **DENIES** the Plaintiff's motion for the reasons set forth below.

### I.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for

---

[1] The Plaintiff is proceeding pro se in this case and was provided with the notice required by Local Rule 56-1(k).

summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "'[W]e look to the burden of proof that each party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

The Court draws facts from the Plaintiff's Amended Complaint and the Defendants' briefs.[2] Where facts are in dispute, the Court designates them as such.

Davis began working for Ford Motor Company ("Ford") in 1994 in Indianapolis, Indiana. Davis was and remains a member of the United Automotive Workers union ("UAW"). In 2011, Davis and other employees were told that the Ford facility in Indianapolis ("Indianapolis facility") was closing. They were offered the opportunity to transfer to other Ford locations in

---

[2] The Plaintiff does not include in her memorandum in support of her motion for summary judgment a Statement of Material Facts Not in Dispute as required by Local Rule 56-1(a) or a section labeled "Statement of Material Facts in Dispute" in her response as required by Local Rule 56-1(b). The Plaintiff filed a Supplemental Motion of Genuine Issues Not in Dispute (Dkt. No. 77) containing the following fact alleged by the Plaintiff to be not in dispute: "In 2011 & 2012, the UAW and Ford Motor Company failed or refused to incorporate the directives of the 2007 & 2011 Agreements into the closing of the Ford Plant; in 2011 & 2012; thus, their employees and members' rights were violated." From the Defendants' briefings, the Court understands this fact to be in dispute, but acknowledges and considers the Plaintiff's filing.

2

Illinois and Kentucky. A collective bargaining agreement between Ford and the UAW governs employee transfers. Davis chose to transfer to a Ford facility in Louisville, Kentucky ("Louisville facility"), and signed a Non-Skilled Job Opportunities Transfer Agreement ("Transfer Agreement") on July 11, 2011. The Transfer Agreement provided Davis with an opportunity to rank locations for potential transfer and required her to "acknowledge that this posting is for permanent non-skilled job opportunities." Dkt. No. 57-2 at 18. Davis initialed the form next to her permanent assignment choice indicating as follows: "**I accept such offer to transfer permanently to Louisville Assembly.**" *Id.* at 19 (emphases in original). The Transfer Agreement contained the following two relevant provisions:

- I further understand that by accepting the Enhanced Moving Allowance payment that I forfeit my Return to Basic Unit Rights under Appendix O and Article VIII, Section (1)b [sic] of the Collective Bargaining Agreement.

- I understand that if I am a Ford employee working at an ACH-LLC location, by volunteering for this opportunity I understand that all volunteers from ACH-LLC locations, who transfer to a Ford location, waive Article VIII, Section 1(b) seniority basic unit rights and Appendix O return home rights to all other ACH-LLC locations. The location that I transfer to would become my new basic unit.

*Id.* at 18-19.

The Indianapolis facility is an ACH-LLC location. Return to basic unit rights, or return home rights, allow an employee to transfer from an employee's basic unit, or home facility, to a different location while retaining priority rights to later return to the basic unit. Dkt. No. 54 at 4-5 (citing Dkt. No. 60-1 at 5; 8 & 60-2 at 3).

In October 2011, the president and chairperson of the Indianapolis local UAW informed its members that it learned that there were plans to consolidate Ford sites in Evansville and Chicago to a site in the Indianapolis area. He noted that he was "unaware of the companies [sic] timing for the process of consolidation," explained that he "expressed to all parties that if jobs

3

are available that it is incumbent to offer those jobs to any seniority person who may be interested regardless of previous offerings," and asserted that the UAW "will fight with everything we have to make sure the opportunities are given to our members if any become available." Dkt. No. 65-2 at 2.

Davis began working at Ford's Louisville facility in February 2012. When she transferred to the facility, Ford and the UAW offered Davis an "Enhanced Relocation Moving Allowance" benefit ("Moving Allowance"). Pursuant to Article IX, Section 28 of the collective bargaining agreement, Davis needed to "file[] an application for a Moving Allowance not later than six months after the first day he/she worked at the new Plant." Dkt. No. 57-2 at 10. Davis did not apply for or receive a moving allowance benefit. She continues to work in the Louisville facility as an Assembler.

Ford announced it was opening a new facility in Plainfield, Indiana, in 2014. In April 2014, the local UAW in Louisville, on behalf all 228 employees who transferred from the Indianapolis facility to the Louisville facility, including Davis, filed an appeal with the National Job Security, Operational Effectiveness and Sourcing Committee ("NJSOESC"), a panel of representatives from Ford and the UAW, to decide job security-related issues. The local UAW in Louisville contended that Ford violated provisions of the collective bargaining agreement by not providing all transferees with the same moving allowance opportunities. On August 7, 2014, the NJSOESC concluded that "Company records show that all employees from the Indianapolis Plant (ACH) were provided one election, Option 1 - Enhanced Relocation Moving Allowance," which resulted in the termination of return to basic unit rights at the Indianapolis location and made the Louisville facility their new basic unit, or home facility. Dkt. Nos. 57-2 at 27; 60-2 at

4

5. The result of this ruling was that the transferees did not have rights to return to Indianapolis to work at the Plainfield facility once it opened.

In or around September 2014, the Plainfield, Indiana facility opened. Davis told her manager and UAW representatives that she wanted to transfer to the Plainfield facility. Ford and the UAW denied Davis's request.

Davis began an approved medical leave on September 28, 2014. During her leave, she underwent treatment for alcoholism in Indianapolis. On December 19, 2014, while on leave, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied a transfer to the Plainfield facility because of her race and sex.

Davis remained on medical leave until January 5, 2015. At that time, her treating health care providers released her to return to work with the following restrictions: They limited her to working thirty hours per week and recommended that she be permitted to leave work at noon on Thursdays so that she could attend an appointment from 6:00 p.m. to 7:30 p.m. in Indianapolis, starting January 15, 2015. The weekly appointment was expected to run through April 10, 2015, after which she would "be released to full-time work on April 13, 2015." Dkt. No. 60-1 at 19. The Thursday evening appointment was the only reason Davis had to have her work schedule limited to thirty hours.

Davis presented her work restrictions to Human Resources, and she was directed to provide the restrictions to Roy Francis, her supervisor. Francis told her he would not accept the restrictions. Ford instead placed Davis on "No Work Available" leave starting January 7, 2015. While on this leave, Davis continued to receive the short-term disability payments she had received while on medical leave. Davis then had a hysterectomy on March 23, 2015. On May 4,

2015, she was released to return to work with no restrictions following surgery. Davis returned to full-time work at the Louisville facility on May 4, 2015, where she is still employed.

On October 2, 2015, Davis filed a second charge of discrimination with the EEOC, alleging sex, race, and disability discrimination and retaliation. She alleged that she would have been accommodated rather than placed on leave if she had not filed a prior charge of discrimination. She also alleged that "[b]ut for the nature of [her] illness[,] she would have been allowed to return to work with restrictions." Dkt. No. 60-6 at 4. Davis identifies her disability as alcoholism.

### III. DISCUSSION

Davis alleges that she was discriminated against because of her race, sex, and disability and retaliated against for engaging in protected activity. The Defendants move for summary judgment on all of Davis's claims.

#### A. Race and Gender Discrimination

Davis contends that she was subjected to disparate treatment based on her race and gender when she was not allowed to transfer to the Plainfield facility and did not receive a Moving Allowance. "The ultimate question . . . , and that which is relevant here, is 'whether a reasonable jury could find prohibited discrimination.'" *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016) (stating in a national origin discrimination case that the "sole question that matters" is "[w]hether a reasonable juror could conclude that [the plaintiff] would have kept his job if he had a different ethnicity, and everything else had remained the same").

Although the Seventh Circuit suggests "look[ing] past the 'ossified direct/indirect paradigm,'" *Cole v. Bd. of Tr. of N. Ill. Univ.*, 838 F.3d 888, 899 (7th Cir. 2016) (quoting *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013)), the Defendants examine Davis's discrimination claims using the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, to avoid summary judgment, Davis must establish that (1) she belongs to a protected class, (2) she met her employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). Once a plaintiff establishes her *prima facie* case, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the employment action. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014). On such a showing, the burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id.*

Davis has met the first and second prongs of the *prima facie* test: It is undisputed that she is a member of two protected classes – she is an African American woman – and that she is meeting Ford's legitimate performance expectations. Further, the Court assumes for purposes of this entry that Davis suffered a material adverse employment action. The remaining prongs are discussed, in turn, below.

### 1. Similarly Situated Employees

The Defendants argue that Davis has not identified a similarly situated employee outside either of her protected classes who was treated more favorably. A similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects. *Tank v. T–Mobile USA, Inc.*, 758 F.3d 800, 809 (7th Cir. 2014) (citation omitted). As the UAW

points out, Davis stated that she did not know of anyone who transferred from Indianapolis to the Louisville facility and later requested and received a transfer to the Plainfield facility. Dkt. No. 56 at 15 (citing Dkt. No. 57-1 at 7) ("Q. 'Do you know of any individuals who transferred from Indianapolis ACH to Louisville Assembly like you did who were allowed to relocate back to Zone 26 and got to work at Plainfield HVC?' A. 'No.'"). She similarly failed to identify any similarly situated employee who did not apply for a Moving Allowance but received it. As a result, she has failed to establish a *prima facie* case of race or gender discrimination.

### 2. *Pretext*

Even if Davis had identified a similarly situated comparator, a reasonable jury could not find pretextual the reasons Davis did not receive a transfer or Moving Allowance. "[A] party establishes pretext with evidence that the employer's stated reason . . . 'was a lie—not just an error, oddity, or oversight.'" *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)).

Davis herself has pointed to a reasonable justification for the Defendants to have denied her transfer request: She signed a Transfer Agreement in which she agreed to transfer permanently to the Louisville facility, terminate her seniority rights, and terminate her "return home rights to all other ACH-LLC locations," which included the Indianapolis facility, and presumably, the Plainfield facility after it opened in 2014. *See* Dkt. Nos. 65-1 (Transfer Agreement) & 65 at 2 (referring to the Transfer Agreement). Moreover, the NJSOESC determination on the UAW's appeal made it clear that "Company records show that all employees from the Indianapolis Plant (ACH) were provided one election, Option 1 - Enhanced Relocation Moving Allowance," which resulted in the termination of return to basic unit rights at the Indianapolis location and made the Louisville facility their new basic unit, or home facility.

8

Dkt. Nos. 57-2 at 27; 60-2 at 5.  Davis has offered no evidence to raise a reasonable inference that the Defendants lied about why they denied her request to transfer to the Plainfield facility.

Similarly, Davis has not offered evidence of pretext regarding her failure to receive a Moving Allowance.  As the Defendants note, Davis stated in her deposition that she decided not to apply for the Moving Allowance:

> Q. You had an opportunity to also apply for enhanced relocation allowance; correct?
> A. Correct.
> Q. And you opted not to, correct?
> A. Correct.
> . . .
> Q. She [a Defendant representative] told you that you couldn't elect those other options, correct?
> A. Correct.
> Q. That the only option you could elect was the enhanced relocation allowance; correct?
> A. Correct.
> Q. Okay.  And you declined that?
> A. Correct.

Dkt. No. 68 at 8-9 (citing Dkt. No. 57-1 at 4).  Davis explained that she did not apply for a Moving Allowance, and that is the reason the Defendants gave for her not having received it.[3]  Accordingly, no reasonable jury could conclude that the Defendants' reasons for denying Davis's transfer or for her failure to receive a Moving Allowance were a pretext for discrimination.  Thus, Davis's *prima facie* case under *McDonnell Douglas* fails.

### 3. No Evidence of Race or Gender Discrimination

Finally, when stepping back from the *McDonnell Douglas* burden-shifting framework to the broad questions provided by the Seventh Circuit in *Hooper* and *Ortiz*, Davis has not

---

[3] Davis states that she was never given an application for the Moving Allowance.  *See* Dkt. No. 62 at 1.  It appears from her deposition testimony, however, that she did not request an application.

9

identified sufficient factual information that would permit a reasonable jury to find that she was terminated because of racial or gender animus. *Cole*, 838 F.3d at 900 ("Different treatment can be circumstantial evidence of discrimination, but the experiences [the plaintiff] has identified do not 'point directly to a discriminatory reason for the employer's action.'") (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)). Davis suggests that the actions taken against her must have occurred because of her race or gender. However, she has not offered evidence of race- or gender-based animus in any of the actions the Defendant took. "Simply being a member of a protected class, without something more to link that status to the action in question, is not enough to raise a reasonable inference of discriminatory animus." *Cole*, 838 F.3d at 900. As a result, Davis has not met her burden: No reasonable jury could find that she was denied a transfer or did not receive a Moving Allowance because of her race or gender. Accordingly, the Court **GRANTS** summary judgment in the Defendants' favor on Davis's race and gender discrimination claims.

### B. Disability Discrimination

The Americans with Disabilities Act ("ADA") and its amendments provide that a covered employer shall not "discriminate against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); *see also Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014). For purposes of this Entry, the Court assumes Davis has a disability as defined by the ADA.

Davis claims that Ford failed to accommodate her disability by placing her on leave rather than allowing her to work reduced hours.[4] She also contends that Ford refused to engage in the interactive process with her. Davis requested a reduced-hour schedule for the sole purpose of attending a doctor-recommended meeting in Indianapolis every Thursday at 6:00 p.m. from January 7, 2015, through April 10, 2015. Dkt. No. 60-1 at 19 ("Q. 'Okay. So with respect to this being able to work only 30 hours per week, was that to enable you to travel back to Indianapolis for this appointment?' A. 'Yes.' . . . Q. 'Was there any other reason that you needed to have a limited work schedule of 30 hours, any reason other than you having to drive back to Indianapolis for this appointment?' A. 'No.'"). Ford did not provide this accommodation because it does not offer part-time assembly work at the Louisville facility. Dkt. No. 54 at 8 (citing Dkt. No. 60-4 at 3). Davis also stated that she was not aware of any hourly employee at the Louisville facility who had been allowed to work a part-time schedule. Dkt. No. 60-1 at 21. Ford explained that "[a]ccommodating a reduced[-hours] schedule [for Davis's position] would have been particularly difficult and costly because it requires the plant to maintain and pay an extra employee for the entirety of the shift, thus affecting the plant's budgeting and manpower planning." *Id.*

Instead of providing that accommodation, Ford placed Davis back on leave for the full duration for which Davis requested a reduced-hour schedule. Davis agreed that the leave accommodated her restrictions. *See* Dkt. No. 60-1 at 21 ("Q. 'Is it fair to say that [Ford] accommodated those restrictions [working no more than 30 hours per week and attending Thursday night appointments in Indianapolis] by having you continue on your short-term

---

[4] Davis does not appear to bring a claim under the ADA against the UAW. *See* Am. Compl. ¶ 50 ("Defendant Ford violated Davis's rights as protected by the [ADA].").

disability leave?' A. 'Yes.'"). She further did not suggest alternatives to being placed on leave, file a grievance, or otherwise object to being placed on leave. *See id.* at 23. Rather, she left the Louisville facility on January 7, 2015, and did not speak with anyone from labor relations until she returned back after her hysterectomy in May 2015. *Id.* at 22.

Ford provided Davis with an accommodation, just not the accommodation that she sought. *See Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) ("It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests.") (citations omitted). Moreover, Davis agreed that Ford accommodated her restriction by placing her on leave, and she acknowledged that, after Ford sought to put her on leave, she did not seek an alternative accommodation or complain to Ford about the offered accommodation. Dkt. No. 60-1 at 21. Ford did not fail to reasonably accommodate Davis, nor did it fail to engage in the interactive process. The Court, therefore, **GRANTS** Ford summary judgment on Davis's disability discrimination claim.

### C. Retaliation

Davis alleges that Ford retaliated against her for engaging in protected activity.[5] Title VII's anti-retaliation provision makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in any manner in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Davis raises three

---

[5] Davis does not bring a retaliation claim against the UAW. *See* Am. Compl. ¶ 46 ("Defendant Ford refused to allow Davis to return to work with restrictions and/or refused to transfer Davis in retaliation for her engagement in the statutorily protected activity of filing EEOC charges alleging sex and race discrimination.")

potentially material adverse actions as the bases for her retaliation claim: being denied a transfer to the Plainfield facility, failing to receive a Moving Allowance, and being denied a reduced-hour schedule.[6] As with her race and gender discrimination claims, she does not clarify whether she pursues her claim under the direct or indirect methods of proof or both. *See Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (outlining elements for retaliation claim while noting that it questions the formal distinctions between the direct and indirect methods) (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015)). Ford addresses the direct method only. *See* Dkt. No. 54 at 17. The Court analyzes Davis's claim under both the direct and indirect methods.

Davis cannot survive summary judgment using the indirect method because she again failed to identify a similarly situated employee who was treated more favorably. *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 753 (7th Cir. 2007) (affirming summary judgment for employer on retaliation claim where employee did not show, among other things, that other employees were outside the protected class); *see also Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006) (affirming summary judgment for employer where employee did not point to similarly situated employee who had not engaged in protected activity); *see also Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 694 (7th Cir. 2014) (speculating that, had the plaintiff proceeded under the indirect method, she likely would have failed "as the result of her failure to introduce into the record a similarly-situated comparator who had not filed an EEOC charge and

---

[6] Ford takes issue with the fact that Davis did not raise all three potentially material adverse actions in her charge of discrimination. *See* Dkt. No. 54 at 19; *see also* Dkt. No. 69 at 7-8. Davis first alleged retaliation in her second charge of discrimination, alleging that "[b]ut for . . . having filed her Charges of Discrimination based on her race and gender . . . , [she] would have been accommodated and allowed to return to work." Dkt. No. 60-6 at 4. Nonetheless, the Court considers each of the three actions in its analysis and will assume, without deciding, that each of the three constituted an adverse action.

who was treated more favorably"). Davis has not identified an employee who did not engage in protected activity and was granted transfer to the Plainfield facility, received a Moving Allowance, or was allowed to work reduced hours.[7] For this reason, her retaliation claim fails under the indirect method.

To survive summary judgment under the direct method of proof, Davis must point to evidence from which a reasonable juror could conclude that (1) she engaged in protected activity; (2) she suffered a material adverse employment action; and (3) there is a causal connection between her protected activity and the adverse employment action. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680–81 (7th Cir. 2015) (citation omitted).

Davis filed a charge of discrimination with the EEOC on December 19, 2014, and a second charge of discrimination on October 2, 2015. She engaged in protected activity each time she filed a charge. She does not identify any protected activity other than the two charges she filed with the EEOC.

Davis's request to transfer to the Plainfield facility was denied in September 2014, which was well before she filed her first charge of discrimination in December 2014. In her deposition, Davis even responded "Yes" to the following question: "So timing-wise, this charge of discrimination you filed in December could not have been the reason for your denied transfer in September, correct?" Dkt. No. 60-1 at 26. Because Davis did not engage in any protected activity prior to being denied a transfer to the Plainfield facility, the two cannot be causally

---

[7] The Court acknowledges that, in her EEOC charge, Davis states generally, "[u]pon information and belief, Ford has allowed employees that did not file Charges of Discrimination with the EEOC to return to work with restriction." Dkt. No. 60-6 at 4. She does not provide any support for such a claim and has not identified any similarly-situated comparator who did not file an EEOC charge and was treated more favorably.

connected. Accordingly, Davis's retaliation claim based on the denial of her request to transfer fails as a matter of law.

Davis also argues that she was retaliated against by being placed on leave rather than receiving the reduced-hour schedule she had requested and by being denied a Moving Allowance. The Seventh Circuit has recognized a number of categories of evidence a plaintiff might offer to raise an inference of a causal connection: "'suspicious timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual' and other evidence from which an inference of discriminatory intent might be drawn." *Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, (7th Cir. 2016) (quoting *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881 (7th Cir. 2014)).

Rather than point to any facts to support her claim, Davis makes only generalized statements regarding retaliation and produces facts that controvert her arguments. Davis, for example, admits she has no information to support a causal connection between her EEOC charge and her placement on leave when she requested a reduced-hour schedule. *See* Dkt. No. 60-1 at 26 ("Q. 'Do you have any information to suggest that you were put on no work available on January 7 because you had filed a charge of discrimination?' A. 'No.'"). She, furthermore, admits that she did not apply for a Moving Allowance, making it impossible for Ford to have denied giving it to her in retaliation for her having engaged in protected activity. Davis, therefore, has not met her burden of showing a causal connection between the filing of her EEOC charges and the denial of her request for a reduced-hour schedule or her failure to receive a Moving Allowance. As a result, no reasonable jury could find a causal connection between her protected activity and the actions about which she complains. Accordingly, the Court **GRANTS** Ford's motion for summary judgment regarding Davis's retaliation claim.

### D. Breach of Collective Bargaining Agreement

In her brief in support of her motion for summary judgment, Davis raises a new claim. She alleges that the Defendants breached the collective bargaining agreement. Although it is not entirely clear from her brief, she appears to argue that the Defendants did so by failing to provide her with an application for the Moving Allowance offered in the Transfer Agreement. Dkt. No. 62 at 5-6.

Ford asks this Court to disregard Davis's breach of contract theory because it is raised for the first time in her summary judgment brief, which it argues, should not be permitted. Dkt. No. 69 at 8. It further argues that Davis has not exhausted the grievance and arbitration procedures outlined in the collective bargaining agreement and that the Labor Management Relations Act bars her attempt to bring such a claim. Dkt. No. 69 at 9.

The Court does not find Davis's breach of contract claim to be precluded by her failure to articulate it sooner. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) ("The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories.") (quotation omitted); *see also Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("[A] trial court is obligated to give a liberal construction to a pro se plaintiff's filings.") (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). As Ford points out, however, Davis does not point to any facts supporting that claim. Davis does not indicate that she requested an application for the Moving Allowance within the time frame allowed under the collective bargaining agreement. Moreover, in her amended complaint, she states that she "did not apply to receive [Moving Allowance] benefits," Am. Compl. ¶ 17, a fact that, as previously noted, she confirmed in her deposition. *See supra* p. 9 (quoting Dkt. No. 57-1 at 4). Further, her amended complaint indicates that she, "at all times relevant to this litigation, resided within the

geographical boundaries of the Southern District of Indiana" and "did not move to or live in Kentucky at any times relevant to this lawsuit." Am. Compl. at ¶¶ 2 & 18.

Ford simply could not have breached the collective bargaining agreement by failing to provide Davis a benefit that she failed to request. Indeed, it appears that she did not request it because she did not move, and, ergo, did not incur moving expenses. Davis's claim for breach of contract, therefore, fails, entitling the Defendants to summary judgment on that claim as well.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motions for summary judgment (Dkt. Nos. 53 & 55) are **GRANTED** in their entirety, the Plaintiff's motion for summary judgment (Dkt. No. 62) is **DENIED** it its entirety, and Plaintiff's motion to supplement final witness and exhibits list (Dkt. No. 78) is **DENIED AS MOOT**.

SO ORDERED: 12/19/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Tamara Davis**
**5444 Mark Lane**
**Indianapolis, IN 46226**

Copies to all counsel of record via electronic notification

17